* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to re-hear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — North Carolina Industrial Commission forms and filings;
 b. Stipulated Exhibit two (2) — Plaintiff's medical records, including Plaintiff's vocational records;
 c. Stipulated Exhibit three (3) — The parties' written discovery responses;
 d. Stipulated Exhibit four (4) — Plaintiff's personnel files;
 e. Stipulated Exhibit five (5) — Plaintiff's Social Security documents;
 f. Stipulated Exhibit six (6) — Plaintiff's prescription drug card;
 g. Stipulated Exhibit seven (7) — Miscellaneous correspondence dated January 9, 2007, January 16, 2007, and January 22, 2007;
 h. Stipulated Exhibit eight (8) — Form 22.
2. The parties are subject to the North Carolina Workers' Compensation Act.
3. An employment relationship existed between the parties at all times relevant to these proceedings.
4. The P.M.A. Insurance Group (hereinafter referred to as "Defendant-Insurer") provided workers' compensation insurance coverage for Holiday Inn Airport (hereinafter referred to as "Defendant-Employer") at all times relevant to these proceedings.
5. Plaintiff's average weekly wage is $301.00, yielding a compensation rate of $267.00 per week. *Page 3 
6. Plaintiff injured her right shoulder in the course and scope of her employment with Defendant-Employer on March 6, 2003.
7. The medical index set out in Stipulated Exhibit two (2), as well as the medical records attached to Dr. Steven Douglas Crane's deposition, reflect the most current medical records in this matter.
8. Plaintiff went out of work beginning April 28, 2003 due to her March 6, 2003 work injury, and Defendants have been paying temporary total disability benefits since that time.
9. In lieu of deposition testimony, the parties agreed that Ms. Diane Bowers, a counselor at Blue Ridge Community College, would have testified that Plaintiff has been making diligent, but unsuccessful attempts to pass basic literacy tests at that school.
 * * * * * * * * * * * ISSUES
Plaintiff contends that the issue for determination is:
1. Whether Defendants provided recommended medical treatment and prescribed pain medications to Plaintiff?
Defendants contend that the issues for determination are:
1. Whether Plaintiff is entitled to further benefits under the North Carolina Workers' Compensation Act?
2. Whether Plaintiff refused suitable employment with Defendant-Employer such that any benefits she may be entitled to shall be terminated?
 * * * * * * * * * * * *Page 4 
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is a 63-year-old woman, born on September 29, 1944. She is illiterate, having only a fifth (5th) grade education, as well as a very low score on intelligence and academic testing. Some of Plaintiff's intellectual/academic abilities are actually on a third (3rd) grade level.
2. Plaintiff is working toward passing basic literacy tests, but remains unsuccessful in these efforts, as of the date of the hearing before the Deputy Commissioner. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff has been making diligent efforts toward improving her literacy and academic abilities.
3. Plaintiff worked for Defendant-Employer for over three (3) years as a housekeeper/room attendant, beginning on February 10, 2000. During that time, she received regular raises and good performance evaluations.
4. Prior to March 6, 2003, Plaintiff did not have any physical or mental ailments that kept her from performing the physical requirements of her housekeeping/room attendant job. Ms. Patricia Darlene ("Dolly") Waldbart, Plaintiff's daughter, testified that prior to March 6, 2003, her mother was "pretty active," had "lots of energy," and kept a "meticulous" house. Ms. Donna Marie Angel, Plaintiff's former supervisor, also testified that Plaintiff had no physical limitations in performing her work for Defendant prior to March 6, 2003.
5. On March 6, 2003, Plaintiff injured her right shoulder at work when her laundry cart flipped over, and she then tried to grab it with her right arm. Prior to March 6, 2003, Plaintiff suffered from a degenerative condition in her upper right arm. The Full Commission finds, based upon the greater weight of the evidence, that this March 6, 2003 work injury to Plaintiff's right shoulder significantly aggravated Plaintiff's previously existing degenerative condition. *Page 5 
6. Plaintiff suffered from, and continues to suffer from, severe pain in her upper right arm since her March 6, 2003 work injury, ultimately requiring two (2) surgeries on her right shoulder — on May 16, 2003 and on November 26, 2003. This pain prevents Plaintiff from working and doing "normal household stuff" that she used to do both at home and at work. Plaintiff describes the pain as similar to "a hard cramp" and "like a knife sticking in it [her right shoulder]."
7. Defendant accepted this claim pursuant to a Form 60, and has been paying temporary total disability benefits to Plaintiff for her inability to work since March 6, 2003.
8. Dr. Steven Douglas Crane has been serving as Plaintiff's family physician since August 24, 2000. He treated Plaintiff for right shoulder pain in August 2002, some five (5) months before her March 6, 2003 work injury. On September 12, 2002, Dr. Crane injected Plaintiff's right shoulder with marcaine to help relieve her pain. Dr. Crane did not take Plaintiff out of work for this right shoulder pain prior to March 6, 2003, and did not feel that Plaintiff's right shoulder complaints prior to March 6, 2003 created any medical restrictions on her ability to work as a housekeeper/room attendant.
9. Dr. Crane noted, but dismissed, Plaintiff's failure to specifically report her March 6, 2003 work injury to him, since many of his patients "are quite concerned about reporting injuries that occur at work . . . because you know, they often lose their jobs . . . they don't want it to get back to their boss."
10. Dr. Crane testified that Plaintiff was a truthful and "very stoic individual" whom *Page 6 
he felt was honest and straightforward with him.
11. Dr. Crane has been providing, and continues to provide, Plaintiff with pain management treatment and pain medication prescriptions. Dr. Crane opined that Plaintiff is not capable of returning to any type of employment due to her right shoulder and other medical problems.
12. Defendants provided Plaintiff with a prescription medication card for necessary prescription medications; however, Wal-Mart did not accept this card. Defendants did not provide, and continue to refuse to provide, Plaintiff with an alternate prescription medication card that she can use at Wal-Mart.
13. Defendants did not reimburse, and continue to refuse to reimburse, Plaintiff for her out-of-pocket prescription medication expenditures for prescription medications related to Plaintiff's March 6, 2003 work injury, despite repeated requests by Plaintiff to do so.
14. Defendants refused to authorize treatment by Dr. Crane for Plaintiff's pain management after her second (2nd) surgery on November 26, 2003. Nevertheless, Plaintiff continues to treat with Dr. Crane without Defendants paying for the same.
15. Dr. Werner Commodore Brooks is the orthopaedic surgeon who performed both of Plaintiff's right shoulder surgeries. In the two and one-half (2 ½) years following the second (2nd) surgery on November 26, 2003, he saw Plaintiff a total of 14 times for complaints of continued right shoulder pain and discomfort.
16. Dr. Brooks opined that Plaintiff has real and consistent pain in her right shoulder from the March 6, 2003 work injury.
17. Dr. Brooks recommended that Plaintiff consider a DuPuy graft of her right shoulder, due to her persistent pain, which he considered to be a "salvage-type operation to help *Page 7 
someone [like Plaintiff] with recurrent, persistent pain." Dr. Brooks further opined that a dedicated pain management course of treatment would not help Plaintiff any more than basic treatment by a general orthopaedist and/or family physician.
18. While Dr. Brooks testified that Plaintiff could havepossibly torn her rotator cuff before March 6, 2003, it was his opinion, based upon his long-standing care and treatment of Plaintiff, that the pain from her right rotator cuff tear is more likely related to and aggravated by the March 6, 2003 work injury.
19. Finally, Dr. Brooks opined, and the Full Commission finds as fact, that Plaintiff's left arm complaints are also likely related to and aggravated by the March 6, 2003 right shoulder work injury, due to normal, expected over-compensation to the non-injured arm.
20. Dr. Patrick Michael Connor is an orthopaedic surgeon who saw Plaintiff on October 10, 2006 for an independent medical examination, requested by Defendants. He opined that Plaintiff did not need further right shoulder surgery, but that she would benefit from a pain management course of treatment.
21. On January 9, 2007, Defendants offered Plaintiff two (2) positions as a front desk worker and a concierge attendant. Plaintiff's counsel received these offers on January 15, 2007, and requested that Dr. Brooks evaluate the medical requirements of these potential positions. Before Dr. Brooks made a determination of whether these jobs were within Plaintiff's physical abilities, Defendants filled the positions with other individuals.
22. These positions, proffered to Plaintiff eight (8) days before the hearing before the Deputy Commissioner, were not suitable employment that Plaintiff could have reasonably been expected to perform. Both jobs required considerable computer skills and a degree of literacy that Plaintiff does not possess. Ms. Marilyn Marie Marino, Defendant-Employer's general *Page 8 
manager for the Asheville area, admitted that Defendant previously never hired an illiterate person for either of these jobs.
23. Randy Lee Adams, M.Ed, C.V.E., Plaintiff's vocation rehabilitation counselor, testified and prepared a vocational report documenting Plaintiff's low academic abilities. He opined that even if Plaintiff was at maximum medical improvement, she is nevertheless permanently and totally disabled from any gainful employment. Mr. Adams based his opinion on Dr. Brooks' limitation of Plaintiff to sedentary work, objective testing of Plaintiff's hand dexterity, and academic testing.
24. Mr. Adams further opined, and the Full Commission finds as fact, that based on Plaintiff's physical and mental capabilities, job activity in the proffered positions by Defendants in January 2007 would have been futile, and considerably beyond Plaintiff's academic potential. Finally, Mr. Adams opined that any search for employment that exists in Plaintiff's local job market would likewise be "futile" and unproductive, based on Plaintiff's physical and mental capabilities.
25. Paul David Toney, M.A., C.R.C. was the vocational expert assigned to evaluate Plaintiff by Defendants. He worked with her for over two (2) years on locating suitable employment, without success. Mr. Toney testified that Plaintiff was fully cooperative and willing to work with him. Mr. Toney did not feel future job searches would be futile. He opined and the Full Commission finds as fact that Plaintiff's current academic capabilities require that any future vocational efforts should focus on improving her literacy skills.
26. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is a truthful and credible witness, and that her complaints of pain with respect to both of her shoulders are both legitimate and ultimately related to her March 6, 2003 work injury. *Page 9 
27. The Full Commission finds, based upon the greater weight of the evidence, that Defendants' refusal to authorize medical treatment for pain by Dr. Crane is unjustified.
28. The Full Commission finds, based upon the greater weight of the evidence, that Defendants' refusal to provide Plaintiff with a valid prescription medication card and refusal to promptly reimburse her for her out-of-pocket expenditures for prescription medication related to Plaintiff's March 6, 2003 work injury is unjustified.
29. Defendants' refusal to authorize the DuPuy surgery recommended by Dr. Brooks, as well as the formal pain management treatment recommended by Dr. Connor, is not unjustified, due to the conflicting testimony of these physicians. However, the Full Commission finds, based upon the greater weight of the evidence, that Plaintiff should be entitled to pursue either of these courses of treatment at Defendants' expense after further consultations with Dr. Crane and Dr. Brooks, her authorized physicians, regarding the propriety of these modalities.
30. The Full Commission finds, based upon the greater weight of the evidence, that Defendants' offer to Plaintiff of a hotel front desk position and a concierge attendant position eight (8) days before the hearing before the Deputy Commissioner did not constitute an offer of suitable work reasonably within Plaintiff's physical and academic capabilities. Therefore, Plaintiff's refusal of these jobs was justified.
31. Considering Plaintiff's limitation to sedentary work, hand dexterity, academic testing, age, education, and past work history, it would be futile for Plaintiff to engage in a work search without vocational rehabilitation efforts focused upon improving her literacy skills.
32. The Full Commission finds, based upon the greater weight of the evidence, that Defendants did not defend this claim without reasonable grounds, and as such, the assessment of attorney's fees under N.C. Gen. Stat. § 97-88.1 is neither proper nor justified. *Page 10 
33. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is entitled to the attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88 (2007).
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of this claim.
2. Plaintiff sustained a compensable injury by accident to her right shoulder on March 6, 2003. N.C. Gen. Stat. § 97-2(6) (2007). As a result of over-compensation in use of her left arm due to her compensable right shoulder injury, Plaintiff developed pain in her left arm, requiring pain management and other treatment.
3. Plaintiff proved, by the greater weight of the competent and credible evidence of record, that she has an ongoing disability as a result of her March 6, 2003 work injury. N.C. Gen. Stat. § 97-29 (2007).
4. Defendants' January 8, 2007 offer of a position at the front desk and of a position as a concierge attendant was not an offer of suitable employment that Plaintiff could reasonably be expected to perform. Therefore, Plaintiff's refusal of these job offers is justified. N.C. Gen. Stat. § 97-32 (2007); Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
5. Plaintiff is entitled to have ongoing medical treatment for her right shoulder and left arm by Dr. Steven Douglas Crane at Defendants' expense. Plaintiff is also entitled to *Page 11 
necessary medical treatment, as recommended by Dr. Werner Commodore Brooks, as well as by Dr. Crane, after consulting with both physicians, at Defendants' expense. Such treatment could include the DuPuy surgery and/or formal pain management, if both Dr. Crane and Dr. Brooks deem these modalities to be beneficial. N.C. Gen. Stat. § 97-25 (2007).
6. Plaintiff's ongoing disability requires Defendants to continue payment of temporary total disability compensation until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29
(2007).
7. Plaintiff is entitled to the attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88
(2007). N.C. Gen. Stat. § 97-88 (2007).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall continue to pay temporary total disability compensation to Plaintiff until further Order of the North Carolina Industrial Commission.
2. Defendants shall issue a new and valid prescription medication card to Plaintiff, entitling her to obtain prescription medications related to her right shoulder and left arm injuries.
3. Defendants shall immediately re-imburse Plaintiff for all out-of-pocket expenditures for prescription medications related to Plaintiff's March 6, 2003 work injury.
4. Dr. Steven Douglas Crane and Dr. Werner Commodore Brooks are hereby designated as Plaintiff's authorized treating physicians. Defendants are responsible for treatment provided by these physicians to Plaintiff as a result of her March 6, 2003 work injury for so long as said treatment tends to effect a cure, to give relief, and/or to lessen Plaintiff's period of *Page 12 
disability.
5. Plaintiff's counsel is hereby awarded 25 percent of the temporary total disability compensation to which Plaintiff is entitled. As such, Defendants shall send every fourth (4th) compensation check directly to Plaintiff's attorney.
6. Defendants shall pay the costs of these proceedings, which includes a deposition expert witness fee of $350.00 to Dr. Crane, a deposition expert witness fee of $400.00 to Dr. Brooks, a deposition expert witness fee of $165.00 to Paul David Toney, M.A., C.R.C., and a deposition expert witness fee of $165.00 to Randy Lee Adams, M.Ed, C.V.E., if not already paid.
7. Plaintiff's counsel is hereby awarded attorney's fees associated with this appeal to the Full Commission, pursuant to N.C. Gen. Stat. § 97-88 (2007). As such, Plaintiff's counsel shall submit to the Full Commission an Affidavit setting forth the time spent preparing for, attending, and arguing this appeal to the Full Commission. Upon review of this Affidavit, the Full Commission shall issue an Order awarding the specific amount of attorney's fees to which Plaintiff's counsel is entitled.
This the ___ day of August 2008.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1